**UNITED STATES v. ELLIS et al.**

**No. 7122.**

Circuit Court of Appeals, Fifth Circuit.

Dec. 11, 1933.

Chas. R. Guinn, of San Antonio, Tex., and M. S. McCorquodale, Asst. U. S. Atty., of Houston, Tex.

Y. D. Mathes, of Houston, Tex., and John C. Hoyo, of San Antonio, Tex., for appellees.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

Willie Ellis, a colored man, by occupation a laborer, was inducted into the United States Army in March, 1918. While in its service he applied for and was granted a war risk insurance policy for $10,000. Demobilized July 30, 1919, he paid no further premium on his policy, and took no further action about it. On November 1, 1920, after an attack of influenza, he died. The attending physician wrote down his death as caused by mitral insufficiency, and there the matter stood until

1929. In that year, the appellees, his father and mother, claimed the maturity of the policy while in force through the soldier's having become totally and permanently disabled. This claim denied, they brought this suit and prevailed below with both court and jury.

Defendant comes here complaining that it was error not to give the general charge in its favor, and that the court erred to its prejudice in giving and refusing instructions.

Appellee, on the main point urged, the insufficiency of the evidence, rightly relying on it that an appellate court will only reluctantly and in the clearest kind of case reverse the action of a trial court in declining to give a peremptory instruction, vigorously opposes the claim that plain error has been done by letting the case go to the jury, calling the record to witness. The appellant, with equal show of confidence, invokes the record. We look to it. It shows that plaintiff, a strong, hardy young negro laborer, 27 years of age, served for sixteen months, from March, 1918, to July, 1919, in the Army of the United States. Twelve months of that time was served in a labor battalion overseas. From his enlistment record it appears that at the end of his service he was discharged, account demobilization, physical condition good. Neither plaintiffs nor defendant offered his service medical record. Plaintiffs relied on the showing of their lay witnesses as to the deceased's physical condition and as to his inability to follow continuously any gainful occupation after his discharge, on the testimony of the physician in attendance at his death, and on expert medical opinion. The defendant, relying mainly on the insufficiency of plaintiffs' proof, offered only an application for insurance in a private insurance company, purporting to have been made by the soldier, and controverting expert opinion. By their witnesses plaintiffs proved that on one occasion, while in the army, the soldier "fell out" during morning exercises; that on other occasions he had sick spells, "but he did not fall out like he did the first time"; that after his discharge he looked thin and was sick and was taking medicine, at one time being treated by a doctor. One witness, Callie Landry, at whose house he lived, testified that after the soldier came back from the army he was slender and underweight, that he was sick and treated by a doctor, and that "from the fall of 1919 until he died in 1920 he was principally at home. He seemed to be hurting always." Other witnesses testified to his shortness of breath and wheezing, while all offered testimony that, though he did try to do labor-er's work, which was all he was fitted for, he was not able to stand it. "He was shortwinded, would blow and pant, and just absolutely did not have the strength to work." Two witnesses, rice farmers who had employed him before the war, testified that in August after he was discharged he came back to work on the rice farm; this was heavy work, handling 200-pound sacks in the rice fields in the hottest month of the year, and he just could not stand it; that they put him on lighter work, but he could not do that. Other witnesses testified to his trying to wheel coal to a boiler room; that he was weak and had to have frequent intermissions; "that he was kept on because labor was scarce, and that the boy worked off and on for a while until his health got so bad he could not work any more"; this was from some time in December, 1919, until some time in January, 1920; that he worked at this job again for a short while in October, just before his death. Others testified to his working with difficulty for a commission house, trucking fruit and produce.

The medical testimony was that of the doctor who attended him in his last illness, that it was not influenza, but a heart condition, which killed him, and the testimony of a heart specialist that the facts in evidence which were detailed to him in a hypothetical question indicated plainly that the man was suffering from a defective heart condition before August, 1919, and that that condition was no doubt greatly aggravated by the hard work he attempted to do in the rice fields in that month; that a heart condition such as the deceased had was one which required careful treatment; that with careful treatment and avoidance of any kind of overstrain or overexertion the patient might live a long time; but that the condition, when it had advanced far enough, required abstention from all kinds of hard labor.

Defendant's expert testified as to the prevalence of mitral insufficiency; that it was in itself only a symptom, not a disease, and not in itself disabling; that countless numbers of persons had some insufficiency of that kind which they carried all through an active normal life without injury or detriment.

In a charge submitting to the jury the question whether plaintiffs' deceased had, during the lifetime of the policy, that is, on or before August 31, 1919, become totally and permanently disabled, the court fully defined totality and permanence, and left it to the jury to say whether plaintiffs had made out a case of totality and permanence as he defined it to them.

There was no error in refusing the general charge. The assignment on that point is overruled. The evidence offered by plaintiffs was sufficient to take their case to the jury, and, if believed, would warrant a verdict in their favor.

We think, however, that reversible error was committed in the giving and in the refusal of charges on the issue of permanent disability. Just before the judge gave his charge to the jury, the defendant presented and requested the giving of five special charges. These were refused under Rule 13, a local rule, on the ground that they had been presented too late for adequate consideration. The defendant excepted to this ruling. Of these, charges Nos. 2 and 5 presented in a definite and precise way, the point that to mature a policy for total and permanent disability the disease relied on as producing it must not only have brought about total disability while the policy was in force, but must have progressed before the policy lapsed to such a point as to make it appear reasonably certain that the condition of total disablement would continue throughout the natural life of the sufferer. In the main charge the judge at first correctly defined permanent disability as "an impairment of the body or mind, or both body and mind, such as to render it impossible for the soldier to continuously engage in or follow any substantially gainful occupation or employment, and which is founded on conditions which render it reasonably certain that such disability will continue throughout the soldier's life, then incorrectly or in this case you would find whether it did continue throughout the soldier's life." He then proceeded again to incorrectly define permanent disability as applied to the case in hand.

"I will give you that again; such an impairment of the body or mind, or both body and mind, as to render it impossible for the soldier to continuously engage in or follow any substantially gainful occupation or employment, and further, you must find in this particular case that it continued throughout the entire time of his life up to the time he died in November, 1920. Ordinarily, we have cases where the man is alive, and we have to speculate on whether or not it will continue on after the time of the trial. In this particular case you have to find not only that he had a total disability, but that it continued on up to the time of his death."

At the conclusion of the charge defendant, its special charges having been refused on the ground that they came too late, undertook, by excepting to the definition of permanent disability the court gave, to call the contents of the special charges to the judge's attention. It excepted to the statement that, if the deceased was totally disabled prior to the lapse of his policy and that total disability continued until the date of his death, that would be deemed total disability as of the date of the lapse or prior thereto, and asked the court to charge the jury that they must not only find the total disability, but that the procuring cause must have advanced to the stage at which it was total and permanent disability in fact; whereupon the judge, saying that he was not sure he understood counsel's exception, proceeded to again tell the jury that, "if the deceased became totally disabled during the time or period the policy was in force, and you find that he remained totally disabled from that time on up to the time of his death, that would be evidence that it was of a permanent nature and you would be justified and authorized to find that it was of a permanent nature."

We think the court erred both in giving the charge it did, and in refusing to give the charges defendant asked for. Rule 13, on which the action is based, is a salutary rule of general application. It is designed to, and it ordinarily will, operate to aid the court in securing a correct submission to the jury. It was not intended to be, it should not be, enforced so as to prevent a full and clear submission of defensive theories even though not timely presented, when, as here, the charges are few in number and simple in scope and effect. Especially is this so where, as here, the refusal to give the special charges has emphasized and aggravated the error complained of in the main charge in instructing them that, whereas ordinarily the jury had to reach a conclusion as to whether conditions relied on as constituting total and permanent disability within the life of the policy were in fact permanent by speculating on their continuance, in this case, since the defendant was dead, the only thing they had to find, in order to determine that the disability became permanent during the life of the policy, was that total then, it continued to be so until deceased's death. This charge overlooks the fact that the policy becomes a claim not on proof of totality during the life of the policy, but on proof of totality and permanence, and that one might become totally disabled during the life of the policy and might die before he recovered from that disability, and yet this would not of itself be proof that the disablement was then permanent. The only case in

which a charge of the kind given by the court might be appropriately given would be one where the evidence indisputably showed that the total disability came while the policy was in force, and continued, and that, without its abating, he had died from it. In any case where the evidence admits of a conclusion that something else caused or contributed to his death than the total disability claimed, a charge that the mere continuance of disability until death proves its permanence while the policy was in force is error, for this assumes, in favor of the plaintiffs, what the jury must find, not that the soldier was totally disabled when he died, but that the total disability which set in while the policy was in force was founded on conditions which made it reasonably certain that the disability would continue throughout his natural life.

In view of the evidence in this case, that the decedent was taken with influenza shortly before his death, and that it was at least a contributing cause and of the evidence in regard to mitral insufficiency and heart conditions, and their treatment and effect generally, this was not a case for the charge complained of.

For the errors noted, the judgment is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.