CAPITAL TRANSIT CO. v. HOWARD.

No. 11170.

United States Court of Appeals

District of Columbia Circuit.

Argued Jan. 16, 1952.

Decided April 24, 1952.

594

George D. Horning, Jr., Washington, D. C., with whom Frank F. Roberson, Washington, D. C., was on the brief, for appellant.

James F. Reilly, Washington, D. C., with whom Eugene B. Sullivan, Washington, D. C., was on the brief, for appellee.

Before CLARK, BAZELON and WASHINGTON, Circuit Judges.

BAZELON, Circuit Judge.

Edward T. Howard was killed in an accident in which he was run over by a Capital Transit Company[1] bus. In a suit for damages brought by his administratrix, the trial court charged the jury, without objection, that the essential elements of her claim were

> "First, that decedent was a paid passenger on the bus on the occasion in question;
>
> "Second, that defendant was negligent in that its driver started the bus before decedent had safely alighted therefrom; and,
>
> "Third, that such negligence proximately caused decedent's clothes or some portion of his body to be caught within the doors of the bus and decedent to be dragged or thrown under the bus."[2]

Upon trial, the jury found for the administratrix and the court below entered final

1. Hereafter called the Company.
2. Transcript of Record, p. 471.

judgment in her favor. The Company, appellant herein, seeks reversal of that judgment.

The first ground urged is addressed to the refusal of the trial court to direct a verdict for the Company after all the evidence was in. The administratrix had sought to show at the trial that a portion of the decedent's body or clothing was "caught in the [rear] door of the bus" by a premature starting of the vehicle, resulting in his being dragged or thrown to his death under the right rear wheel. This version of what occurred was apparently accepted by the jury. The Company contends, however, that the issue should never have been submitted to the jury because the record contained no proof that the mechanical safety devices of the automatic rear door—which are designed to prevent such a premature starting—were in a state of disrepair. Instead, since it showed adequate inspection and maintenance,[3] the Company argues that it must be conclusively presumed that the safety devices were infallible and that the driver could not have started the bus prematurely.[4]

■ This contention does not accurately reflect the state of the record below. "[A]

demonstration of the operation of the doors of the bus during the trial, on motion of defendant over opposition by plaintiff, disclosed that certain parts of the rubber edges were less sensitive than others, that the rubber edges could be subjected to considerable lateral pressure before the mechanism was activated, and that when the air pressure was lowered as the result of continued use, the doors would not operate properly."[5] This was sufficient to avoid the application of any possible conclusive presumption of infallibility. Thus it is unnecessary to say under what circumstances, if any, such presumption would be valid. We say only that upon this record we agree with the conclusion of the trial judge that the issue of negligence was for the jury despite the evidence of adequate inspection and maintenance introduced by the Company.

■ From our examination of the record, we find there was sufficient evidence upon all the essential elements to warrant submission of the case to the jury and that the ruling of the trial court in that respect was correct.

A second ground for reversal urged upon us is the action of the trial court in giving

3. The Company's brief states at pp. 2–3: "An expert explained that mechanically the rear bus doors are operated by the weight of an alighting passenger on the treadle, that the brakes are automatically applied and the accelerator peddle [sic] cannot be depressed, the bus operator having no control until the doors have fully shut (App. 92–93); that the sensitive edge in the center of the doors sounded an alarm, lighted up a signal on the dashboard and prevented application of power in the event solid matter came between the edges of the door (App. 93); an object less than an inch and a half in diameter within the sensitive edge area when the bus moved would either be carried away, if loose, or would slide out, if rigidly attached (App. 96). No repairs were made to the door in question for over nine months after the accident, and the bus was in service during this period (App. 99). Company records of routine inspections fifteen days prior to and fifteen days after the accident showed no defects nor repairs (App. 108). Police had immediately tested the treadle and sensitive edge at the scene of the accident and found nothing unusual about the operation of the door (App. 111). An inspection of the bus by the District of Columbia Department of Motor Vehicles on the morning after the accident revealed nothing defective in connection with the rear doors of the bus (App. 115). Neither the passenger who alighted from the rear door prior to the accident nor the two who alighted immediately thereafter observed anything unusual about its operation (App. 24, 150, 155)."

4. The Company relies upon Lewis v. Washington Ry. & Electric Co., 1923, 52 App.D.C. 243, 285 F. 977; and Frederici v. Atlantic City & Shore R. Co., 1943, 130 N.J.L. 16, 30 A.2d 820. In Lewis an injury was alleged to have resulted from a defective step of a trolley car. No mechanical or automatic devices were involved.

5. Opinion of the trial court, set forth in Brief for Appellee, pp. 35, 37, D.D.C. 1951. 97 F.Supp. 578, 580.

a supplementary charge[6] to the jury when after four hours of deliberations its foreman advised the court that the jurors were unable to agree.[7]

■ When the court indicated the purpose and nature of the supplementary charge it proposed to give to the jury, counsel for the Company objected that "All of the evidence is in and any charge designed to coerce a settlement would not be in the interests of justice in a civil case."[8] No further objection or specific request for clarification or elaboration was made below at any time. Appellant argues in this court, for the first time, that the disputed charge was given prematurely and failed to include certain specified safeguards. But since the Company failed to afford the trial court the opportunity of considering these objections at any time before the jury left the room, we are precluded by Rule 51 of the Federal Rules of Civil Procedure, 28 U.S.C.A. from considering them.[9] That rule says, in pertinent part:

"No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

■ But upon the basis of the objection that was raised below, we do consider the contention in this court that any supplementary charge would amount, in effect, to coercion and would deprive appellant of "its right to the independent consideration by twelve jurors of disputed facts."[10] The use of a similar charge in a criminal case has been approved by the Supreme Court in Allen v. United States,[11] and by this court in Mendelson v. United States.[12] In the latter case, Chief Justice Groner said:

"While we think it is better to avoid, if possible, the practice of supplementary charges to the jury, the matter is one which is not forbidden by absolute rule, and the propriety must, in the nature of things, be left largely in the discretion of the trial judge."[13]

The principle has been extended to civil cases as well. In Hoagland v. Chestnut

---

6. In the supplementary charge in dispute here, the court said (J. A., pp. 169–70):
"This case has been before you on five days, including today. It is true that you have not devoted the whole of each day to the case on every day because of the opening ball game, which was postponed, and MacArthur's day adjournment but, in a sense, it was a rather protracted case and I am going to give you an instruction which has the approval of the Supreme Court of the United States and I want you to listen attentively and to consider it and return to your jury room and deliberate further after I give this instruction to you.
"The jury is instructed that, in a large proportion of cases, absolute certainty cannot be expected; that although the verdict must be the verdict of each individual juror and not a mere acquiescence in the conclusion of his fellows yet they should examine the question submitted with candor and with a proper regard and deference to the opinions of each other; that it is their duty to decide the case, if they can conscientiously do so; that they should listen with a disposition to be convinced to each other's argument;

"That if much the larger number are for the plaintiff, a dissenting juror should consider whether his views, which make no impression upon the minds of so many jurors, equally intelligent as himself, are correct.
"If, on the other hand, the majority are for the defendant, the minority ought to ask themselves whether their views are correct, which are not concurred in by the majority.
"So you will return to the jury room, deliberate further in the light of these additional instructions."

7. A previous trial of the case was ended by failure of the jury to agree.

8. J.A., p. 169.

9. We think, however, that the objections raised on appeal for the first time are without merit in any event.

10. Brief for Appellant, p. 12.

11. 1896, 164 U.S. 492, 501–2, 17 S.Ct. 154, 41 L.Ed. 528.

12. 1932, 61 App.D.C. 127, 130, 58 F.2d 532, 535.

13. Ibid.

Farms Dairy, [14] we affirmed a judgment in a civil suit for personal injuries where the same problem was involved.[15] We find nothing in the circumstances of the present case to take it out of this line of authority.[16]

Affirmed.

14. 1934, 63 App.D.C. 357, 360, 72 F.2d 729, 732.

15. See also Hill v. Wabash Ry. Co., 8 Cir., 1924, 1 F.2d 626, 631.

16. We do not suggest that the disputed charge set forth in verbatim in footnote 6, *supra*, is model in all respects. No doubt improvements in language can be found to further minimize the danger of unduly influencing the jury.