Le Roy L. WILSON, Appellant,

v.

SOUTHERN FARM BUREAU CASUAL-
TY COMPANY, Appellee.

No. 18056.

United States Court of Appeals
Fifth Circuit.

March 11, 1960.

Donald V. Organ, New Orleans, La.,
for appellant.

Robert J. Vandaworker, Baton Rouge,
La., Taylor, Porter, Brooks, Fuller &
Phillips, Baton Rouge, La., for Southern
Farm Bureau Cas. Ins. Co.

Before RIVES, Chief Judge, and
HUTCHESON and TUTTLE, Circuit
Judges.

RIVES, Chief Judge.

This appeal is from a judgment for the
defendant entered upon a jury's verdict.
The plaintiff sought recovery from the
defendant insurance company under the
Louisiana Direct Action Statute, LSA–
R.S. 22:655, for extremely severe person-
al injuries suffered in an automobile col-
lision.

The collision occurred in the outskirts
of Baton Rouge, Louisiana, at the inter-
section of Airline Highway and Win-
bourne Avenue. Airline Highway runs
generally north and south and Win-
bourne Avenue intersects it at right

angles. Airline Highway is a four-lane thoroughfare, with the northbound lanes separated from the southbound lanes by a neutral ground. Winbourne Avenue is a two-lane street. Stop signs face traffic approaching Airline Highway from Winbourne Avenue. On Airline Highway on either side of the Winbourne Avenue intersection the neutral ground has a cutaway section for cars intending to make a left turn to pull into and stop before proceeding across the two lanes for traffic approaching from the opposite direction. Airline Highway is level and straight at the intersection and for a long distance in each direction.

The collision occurred at approximately noon on April 15, 1957. The weather was clear and dry. The speed limit on Airline Highway was sixty miles per hour for automobiles and forty-five miles per hour for trucks.

Appellant, alone in a Mercury automobile, was proceeding north on Airline Highway intending to make a left turn into Winbourne Avenue. He stopped in the neutral ground and waited for some traffic to pass. The milk truck of appellee's insured was being driven south on Airline Highway at a speed of about forty-five miles per hour. Each driver saw the other vehicle for a considerable time before the collision. The milk truck had been behind another automobile in the outside lane of the southbound Airline traffic, but before reaching the intersection, it pulled from the outside lane and moved into the inside lane next to the neutral ground.

The appellant testified that the milk truck was blinking a signal light for a left turn, but this was denied by several witnesses for the appellee. The collision occurred when the appellant moved the Mercury automobile from a stopped position in the neutral zone and was crossing the southbound traffic lanes of Airline Highway. The milk truck laid down 47 feet of skid marks angling from the inside lane of Airline Highway to the outside lane and to the point of impact. It struck the right center of the Mercury automobile broadside.

The appellant does not argue that he was entitled to judgment as a matter of law, but specifies several claimed procedural errors, each of which will be considered.

 The district court charged the jury in accordance with defendant's requested charge No., 1 as follows:

"Under the Louisiana State Highway Regulatory Law a driver attempting to make a left turn on a public highway must make certain that the turn can be made without danger to normal over-taking or oncoming traffic, and he must yield the right of way to such vehicles. When a left turn is being made and an accident occurs, the burden rests heavily on the driver who is making the left turn to explain how the accident occurred, and to show he was free from negligence."

The plaintiff duly objected to the giving of that charge, as follows:

"The Plaintiff excepts to the Defendant's Charge Number One, which was granted and given, for the reasons that the charge itself does not contain the exceptions to that charge, which, of course, is the doctrine of last clear chance. And the charge is also objectionable because of the use of the word 'heavily' on there, which the burden actually is the same burden that rests on the person who is claiming negligence or any other defense or any other assertion, and the use of the word 'heavily' is superfluous and put a greater emphasis on that particular charge than on the other charges, contrary to what the intent and purpose of the charges are."

Comparing the challenged charge with the statutory language prescribing the duty of a motorist turning his vehicle,[1]

---

1. "§ 236. *Signals for stopping, starting, or turning*
 "A. The driver of any vehicle upon a highway of this state, before starting, stopping or turning from a direct line shall first see that such movement can be made in safety, and, if any pedestrian may be affected by such movement, shall

we might be inclined to agree with the appellant. The statutory duty is couched in the same language as that used in the statutes of other states. Such statutes are generally construed so as not to "convert one wishing to turn into an insurer of others approaching nor prohibit his turning until the circumstances render his crossing absolutely free from danger." 2 Blashfield Cyclopedia of Automobile Law and Practice, Section 1121, p. 430. In Louisiana, "a motorist who desires to make a left turn on a city street is not required by law to wait until there is no traffic in sight before attempting to do so." Kelly v. Neff, La. App.1943, 14 So.2d 657, 660; Moncrieff v. Lacobie, La.App.1956, 89 So.2d 471. Unfortunately for the appellant, however, the Court of Appeals of Louisiana, Orleans, has declared the law in almost the precise terms used in the charge:

"The State Highway Regulatory Law, LSA–R.S. 32:235, 236, makes it clear that a driver attempting to turn to his left on a public highway must make certain that it is safe to do so. When such a left-hand turn is being made and an accident occurs, the burden rests heavily on the driver who is making the left-hand turn to explain how the accident occurred and to show that he was free from negligence."

Codifer v. Occhipinti, La.App.1952, 57 So.2d 697, 699. See also, American Fidelity & Casualty Co. v. Drexler, 5 Cir., 1955, 220 F.2d 930, 933; Seale v. Stephens, La.App.1946, 24 So.2d 651, 653; Aetna Casualty & Surety Co. v. Crow, La.App.1956, 86 So.2d 212, 214.

Admittedly, "in civil jury cases federal courts evaluating decisions of Louisiana state courts as precedents have the difficult task of separating the decisions of the Louisiana courts on the law from their review of the facts." Wright v. Paramount-Richards Theatres, 5 Cir., 1952, 198 F.2d 303, 306. The language quoted, supra, from Codifer v. Occhipinti, 57 So.2d 697, 699, is so phrased as to announce a general principle of law, and, accordingly, we consider it binding upon this Court under the Erie doctrine.[2] It follows that there was no reversible error in the giving of defendant's requested charge No. 1.

■ We find no reversible error in the giving of defendant's requested charge No. 14.

"Number fourteen: Your verdict must be based solely and exclusively on the evidence in the case. You cannot be governed by passion, prejudice, sympathy, or any motive whatever except a fair and impartial consideration of the evidence. And you must not, under any circumstances, allow any sympathy which you might have or entertain for the plaintiff to influence you in any degree whatsoever in arriving at your verdict. The court does not charge you not to sympathize with the plaintiff, because it is only natural and human to sympathize with persons who have sustained loss, affliction or misfortune, but the court does charge you not to allow that sympathy to enter into your consideration of the case or to influence your verdict."

The first two sentences of the charge are admittedly unexceptionable. While the subsequent sentences emphasize the necessity of not allowing sympathy for *the plaintiff* to influence the verdict, and contain no corresponding emphasis as to sympathy for *the defendant*, we think that that is well within the discretion vested in the trial court.

Plaintiff's requested charge No. 1, on the duty of a motorist to keep a proper lookout, refused by the court, was suffi-

give clearly audible signal by sounding the horn; and, whenever the operation of any other vehicle may be affected by such movement, shall give a signal as required in this Section, plainly visible to the driver of such other vehicle, of the intention to make such movement." LSA–R.S. 32:236, subd. A.

2. Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

ciently covered, we think, by the court's general charge.

■ Plaintiff's requested charge No. 7 [3] was refused by the court because it came too late, having been offered for the first time after the case was argued to the jury. Rule 51, Federal Rules of Civil Procedure, 28 U.S.C.A., provides that request for instructions be made "at the close of the evidence or at such earlier time during the trial as the court reasonably directs." While the trial court's discretion to refuse a charge because untimely requested should be sparingly and cautiously exercised,[4] we find no abuse of that discretion in this case, especially in view of the fact that the legal principle requested was substantially included in charge No. 11, given at the request of the defendant.[5]

■ After it had deliberated for approximately two hours and forty minutes, the jury reported to the court that it was unable to agree. The jury was returned to the courtroom where the following proceedings occurred:

"The Court: Madam Foreman, the court has a report from the jury that it is unable to agree. Is that your report?

"The Foreman: That is correct. It's impossible.

"The Court: The court will give this additional charge to the jury.

"Ladies and Gentlemen, both the plaintiff and the defendant are entitled to individual judgment of each and everyone of you. At the same time, it is the duty of the minority in the jury to discuss this case with the majority, to listen to the arguments of the majority, to weigh those arguments and see what weight those arguments have in the evidence.

"Likewise, it is the duty of the majority to discuss the case with the minority, to listen to the arguments of the minority, to weigh those arguments, and see what weight those arguments have in the evidence.

"You must realize that you have heard all of the facts in this particular case. It is a case that must be decided. There is no reason to believe that twelve other jurors will be more successful in reaching a verdict in this matter than you will have been. You must give intelligent and cooperative attention to this consideration in order that there may be a resolution of this conflict which exists between the plaintiff and the defendant in this case.

"With those instructions I will ask the jury to retire again for further deliberation.

"(Whereupon, the jury retired at 12:10 o'clock p. m.)

"The Court: Do you have a motion?

"Mr. Organ: If your Honor please, at this time the plaintiff wishes to note an objection to the charge normally, I think referred to as the dynamite charge, given in this case, because the foreman of the jury advised the court squarely that it was impossible to reach a verdict, and object to the return of the jury to the jury room for deliberation in view of the advice of the jury foreman.

"Mr. Vandaworker: We wish to make the same objection on behalf of the defendant.

---

3. "You are instructed that, in judging whether or not a left-hand turn can be made in safety, a motorist has the right to assume that the oncoming traffic is traveling at a lawful speed and that the driver thereof is exercising a proper lookout and has the vehicle under proper control. Johnson v. Wilson, La.App., 97 So. 2d 674, 679."

4. See United States v. Ellis, 5 Cir., 1933, 67 F.2d 765, 767; 5 Moore's Federal Practice, 2nd ed., Paragraph 51.03, p. 2502.

5. "I charge you that a person is not negligent for failing to anticipate that other persons will be negligent."

"The Court: Very well."

Approximately fourteen minutes later, the jury returned with a verdict for the defendant.

The appellant insists that, when the foreman advised the court that it was "impossible" to arrive at a verdict, it became the court's duty to enter an order of mistrial. Clearly, however, it was for the court, in the exercise of its informed discretion, to determine when the deliberations had proceeded long enough. The charge given by the court was modeled upon that approved in Allen v. United States, 1896, 164 U.S. 492, 501, 502, 17 S.Ct. 154, 41 L.Ed. 528; see also, Capital Transit Co. v. Howard, 1952, 90 U.S.App.D.C. 359, 196 F.2d 593, 596, 597.

We have carefully read the entire record and find no reversible error. The judgment is accordingly

Affirmed.