**John W. HARRIS, Appellant, Defendant,**

**v.**

**UNITED STATES of America,**
**Appellee.**

**No. 6706.**

United States Court of Appeals
First Circuit.

Heard Sept. 14, 1966.

Decided Oct. 28, 1966.

Lawrence F. O'Donnell, Boston, Mass., with whom John B. Greene, Boston, Mass., was on brief, for appellant.

Albert F. Cullen, Jr., Asst. U. S. Atty., with whom Paul F. Markham, U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, and McENTEE and COFFIN, Circuit Judges.

1. § 7214. *Offenses by officers and employees of the United States*
   "(a) *Unlawful acts of revenue officers or agents.*—Any officer or employee of the United States acting in connection with any revenue law of the United States—

   * * * * *
   (4) who conspires or colludes with any other person to defraud the United States; or

   * * * * *
   shall be dismissed from office or discharged from employment and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both. * * *"

2. § 371. *Conspiracy to commit offense or to defraud United States*
   "If two or more persons conspire either to commit any offense against the United States, or to defraud the United

## OPINION OF THE COURT.

McENTEE, Circuit Judge.

This is an appeal by the defendant Harris from a judgment of conviction entered on a jury verdict finding him guilty of conspiring to defraud the United States in violation of 26 U.S.C. § 7214(a) (4) [1] and of conspiring to demand and receive a bribe in violation of 18 U.S.C. § 371.[2]

Harris was a revenue officer in the Collection Division of the Boston Office of the Internal Revenue Service. Codefendant Chandler [3] was his immediate supervisor. In the course of his employment Harris was assigned to collect delinquent taxes from a corporation known as Anita Chue, Inc. and also from Mrs. Anita Chue individually. Both taxpayers were represented by a Boston attorney named Dwork.

Following a conference with Harris in early December 1964, Dwork sent a check to Internal Revenue for $4,000 in settlement of his clients' tax liabilities.[4] Some two weeks later (December 29) Harris visited Dwork at his law office and told him he could recommend that his clients' tax liabilities be written off as uncollectible if the information to be submitted by Dwork was in line with a resume

States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both."

3. Chandler, who was brought to trial with Harris, changed his plea to guilty during the trial.

4. At that time the Anita Chue Corporation owed the government some $17,000 or $18,000 in taxes for which Mrs. Chue could also be held responsible. The corporation had been recently sold and an escrow account set up in connection with the sale. Harris suggested to Dwork that he take his fee out of this account and submit the balance as an offer in compromise. The $4,000 check represented the balance in the escrow account.

Harris showed him.[5] Harris then suggested that he would return the $4,000 check, that Dwork take $1,000 in cash as a fee and submit the balance of $3,000 as an offer in compromise. Dwork immediately reported this unusual conversation to the United States Attorney's office in Boston.

In the investigation that followed Dwork allowed Internal Revenue to install electronic equipment in his office and in his automobile for the purpose of listening to and recording his conversations with Harris.[6]

On December 31 Dwork called Harris at home at the latter's request and some of the matters connected with Harris' proposal were discussed. A meeting was held at Dwork's office on January 4, 1965.[7] Two days later Dwork met Harris in a parking lot in the Boston area and gave him an envelope containing $3,000 in bills.[8] The next morning (January 7) Harris and Chandler were observed driving up to the Internal Revenue building in Harris' car and talking together as they entered the building. Later that day Chandler purchased some clothing with one of the marked bills and when arrested that same afternoon $1,400 of the marked money was found in his wallet. Harris was arrested that evening but none of the marked money was found in his possession.

One of the many contentions raised by the defendant on appeal is that the trial court erred in not excluding the tape recordings and all other evidence obtained from eavesdropping. The tapes objected to were recordings (1) of personal conversations between Harris and Dwork in the latter's office and in his automobile, and (2) of recordings of telephone conversations between them. Defendant's chief objection to the admission of these tapes [9] is that this evidence violates his Fourth Amendment right of privacy.

■ This is not a case in which the listening and recording devices were planted secretly in defendant's home by some unlawful physical invasion. Silverman v. United States, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961). Here, all the recorded personal conversations took place in Dwork's office or in his automobile. The recording devices were installed and the recordings made with Dwork's express consent. Also, the admission in evidence of recordings of the various telephone conversations between Harris and Dwork which were made in the latter's office was entirely proper. Dwork, who was a party to them, certainly was entitled to disclose the contents of these conversations. The fact that the disclosures were made through the medium of an electronic recording device does not render them inadmissible. Glacy v. United States, 361 F.2d 31, 35 (1st Cir. 1966), cert. denied, Oct. 10, 1966, 87 S.Ct.

---

5. If a revenue officer arrives at the conclusion that the account is uncollectible, he prepares a revenue officer's report of uncollectible taxes. This form contains financial and personal information about the taxpayer and must be submitted for approval to his group supervisor. Before submission the usual procedure is to consult with his group supervisor to see if he agrees that this is an uncollectible tax case.

6. All conversations between Dwork and Harris which took place after December 29, 1964, were recorded and the audible ones were offered in evidence at the trial. Telephone conversations between them were also listened to and recorded through the use of electronic devices.

7. At this meeting Harris read his "write-off" report to Dwork and returned the $4,000 check. Dwork then agreed to give him $3,000 which Harris insisted be in cash.

8. The money was passed to Harris on the evening of January 6 in Dwork's car in the parking lot. Harris cautioned him to keep quiet about the deal and made other incriminating remarks. The $3,000 in bills had been marked and the serial numbers recorded by an Internal Revenue Inspector prior to delivery of these bills to Dwork.

9. In our opinion the other objections raised to the admission of the tapes do not warrant discussion.

69. Therefore, the admission of all the recordings complained of by defendant was proper.[10]

Defendant's principal contention on appeal is that he was denied a fair trial because of the partisan manner in which the trial was conducted. In support of this contention he endeavors to persuade us that the trial court (1) refused to give defendant's counsel a full opportunity to cross examine government's witnesses; (2) addressed disparaging remarks to defendant's counsel in the presence of the jury and (3) made partisan comments in the course of its charge to the jury.

From our examination of the voluminous record in this case we are satisfied that this contention is without merit. The extent to which cross examination shall be allowed rests within the sound discretion of the trial court. In order to establish an abuse of discretion in this case, the defendant must show that the restrictions imposed upon his cross examination were clearly prejudicial. McManaman v. United States, 327 F.2d 21, 24 (10th Cir.), cert. denied, Jenkins v. United States, 377 U.S. 945, 84 S.Ct. 1351, 12 L.Ed.2d 307 (1964). There is no such showing here.[11]

The record indicates that the alleged disparaging remarks complained of were made during bench conferences with counsel and there is no showing that they were heard by the jury.[12] Consequently, we cannot say that these remarks prejudiced the defendant's case or amounted to a denial of a fair trial as he claims.

Defendant quotes two unconnected portions of the court's charge,[13] taken out of context, in an attempt to show that the court's comments during the charge were of a partisan character, and denied defendant a fair trial.[14] As we said in Charles A. Wright, Inc. v. F. D. Rich Co., Inc., 354 F.2d 710, 713–714 (1st Cir.), cert. denied 384 U.S. 960, 86 S.Ct. 1586, 16 L.Ed.2d 673 (1966), "The fairness of a charge cannot be determined by considering only a portion of it out of context. On appeal, the charge must be examined as a whole and portions of it will not be scrutinized apart from their content as isolated verbal phenomena." Also, it should be noted here that in giving his charge, a trial judge is necessarily vested with wide discretion. Dranow v. United States, 307 F.2d 545 (8th Cir. 1962).

We have examined the charge as a whole and in our opinion the trial court was well within the limits of this discretion in making the remarks complained of. Taken in context these remarks[15] do not constitute prejudicial error or deprive defendant of a fair trial.

All other points raised have been considered and have been found to be without merit.

Affirmed.

10. It should be noted that a proper foundation for the admission of these recordings was laid through the testimony of one of the Internal Revenue inspectors who helped to make them.

11. In fact, it appears that the trial court allowed defendant's counsel considerable latitude in his cross examination of government witnesses.

12. Only two bench conferences are involved and one of them took place after 4 p.m. presumably after the jury had left the courtroom for the day.

13. (1) The court admonished the jury to keep in mind that it was Harris, not the Internal Revenue Service or the delinquent taxpayer or its attorney, who was on trial and then stated briefly the offenses set forth in the indictment. (2) The court stated Count 3 in its own language and explained that this is a substantive charge as distinguished from the conspiracy counts.

14. Defendant did not object to either of these portions of the charge.

15. Certainly the court had the right to tell the jurors who was and who was not on trial before them and also the nature of the charges. The record does not indicate that this was done in an unfair manner. Obviously the other portion of the charge which related to Count 3 of the indictment did not result in any prejudice. The jury found Harris not guilty of the crime charged in this count.