Louis V. **LYLE** et ux., et al., Appellants,

v.

R. N. **ADAMS CONSTRUCTION COM-PANY** et al., Appellees.

No. 24999.

United States Court of Appeals
Fifth Circuit.

Oct. 2, 1968.

---

**324**

Warren Burnett, Odessa, Tex., for appellants.

Harold L. Sims, Eugene T. Edwards, El Paso, Tex., for appellees.

Before RIVES, GEWIN and THORN-BERRY, Circuit Judges.

GEWIN, Circuit Judge:

This diversity suit was brought by appellants, Louis V. Lyle and others,[1] in the United States District Court for the Western District of Texas against appellees, R. N. Adams Construction Co. and Texas Bitulithic Co.,[2] to recover

---

1. The complaint and notice of appeal list the plaintiffs as follows:

    Louis V. Lyle, et ux, Helen W. Lyle, Louis V. Lyle as Father and Next Friend of William B. Lyle, a minor, and as Next Friend of Sandra Walker, a minor, and Roland J. Hudson, et ux, Ellen W. Hudson.

2. Two additional defendants, the United States and National Advertising Company, were dismissed before trial, the Government on its motion for summary judgment and National by appellant's decision to refrain from further prosecution.

damages in the amount of $288,500 for personal injuries and $1,400 for property damage which appellants sustained in an automobile accident. Trial before a jury resulted in a verdict in favor of the defendants-appellees. Appellants' motion for a new trial was overruled by the district court and this appeal followed. We affirm.

The accident in question occurred on July 12, 1962, while appellants were en route from Las Cruces, New Mexico, to El Paso, Texas, on Interstate Highway 10. Helen Lyle was driving the vehicle. It had been raining and moisture described as mist or light rain was present. At 8:00 or 8:30 p. m. when Mrs. Lyle reached a point some two miles north of the scene of the accident, she began to be confronted with an array of warning signs. Some of the signs were as large as eight feet square and some were smaller. All of the signs were either painted with luminous paint or outlined with reflector beads, some being of a permanent nature and some being merely temporary. Generally, these signs apprised the motorist that the expressway way coming to an end; that the exit for Mesa Road was up ahead; that it was necessary to drive slow and carefully; that the speed limit was 45 m. p. h.; and that construction was in the vicinity.[3]

Helen Lyle admitted seeing these various signs. However, she testified that she did not interpret them to mean that I–10 ended abruptly or that the Mesa Road exit abutted on I–10 at an angle. Instead she thought that the highway would continue and that it would merely narrow somewhat, possibly into an undivided highway. Suddenly, according to her testimony, she saw a mound of dirt in the beam of her headlights and immediately jammed on the brakes. She tried to turn into the exit road but the car skidded 117 feet and crashed broadside against a guard rail with sufficient force to thrust the rail through the body of the car and at the same time knock loose two upright posts which supported it.

Just as the sign "Expressway Ends" stated, I–10 did in fact end. The segment of I–10 on which the Lyles were traveling was completed and approved by the Texas Highway Department some three years prior to the accident and a substantial permanent barrier, set in concrete, had been placed across the highway. This barrier was still in place on the night of the accident. Just north of the barrier a paved access road, Mesa Road exit, led diagonally to the right from I–10. South of the barrier there was no roadway of any kind, just raw land.

On July 3, 1962, the Texas Highway Department entered into a contract with appellees to construct another segment of the expressway extending several miles from the south end of the previously completed segment. The contract

3. The record shows that the warning signs appeared as follows:
  1. Shileds U. S. 80 and 85, MESA ROAD, EXIT TWO MILES.
  2. EL PASO CITY LIMITS.
  3. Shields U. S. 80 and 85, MESA ROAD, EXIT ONE MILE.
  4. EXPRESSWAY ENDS, ONE MILE.
  5. SLOW.
  6. EXPRESSWAY ENDS, ½ MILE.
  7. Barricade on side of highway with small "SLOW" fastened to front.
  8. CONSTRUCTION, DRIVE CAREFULLY, TEXAS HIGHWAY DEPARTMENT. On top of this sign there was another sign reading "SLOW".
  9. OBSERVE WARNING SIGNS, STATE LAW.
  10. EXPRESSWAY ENDS ¼ MILE.
  11. Shields U. S. 80 and 85, MESA ROAD, with an arrow pointing to the right.
  12. R. N. ADAMS CONSTRUCTION CO., KAUFMAN, TEXAS, TEXAS BITULITHIC CO., DALLAS, TEXAS, CONTRACTORS.
  13. SLOW.
  14. CONSTRUCTION, DRIVE CAREFULLY.
  15. HIGHWAY INTERSECTION 2000 FEET.
  16. EXIT with an arrow pointing to the turn-out at the end of Interstate 10.
  17. SPEED 45 MPH.

required the contractor to place and maintain standard barricades and warning signs, properly illuminated by flares or electric flashers, or both, during the hours of darkness.[4] Although the contract was not to become effective until July 19, some work was done on the project on the 5th and 6th. However, this work was limited to an area quite distant from the scene of the accident. On the 10th of July, Adams began erecting signs as required by its contract to protect members of the motoring public. These signs were in addition to those which had served to warn the traveling public for some time prior to the accident in question. Specifically, the signs listed in footnote 3 which were put up by Adams were: "Construction, Drive Carefully"; "Observe Warnings"; "Slow"; and a sign bearing the names of Adams and the Texas Bitulithic Company.

At trial appellants sought to establish that the appellees failed to place a proper barricade across I–10 and had allowed a large amount of dirt to remain on the highway which constituted a hazard to motorists. Appellants further argued that appellees were negligent in that they failed to have in place sufficient and adequate warning signs and barricades properly illuminated by flares or flashers. Specifically, they submitted that appellees were negligent in failing to provide adequate signs apprising travelers that it was necessary to turn off I–10 at the point of the accident.

Appellees denied that they were negligent or in any way responsible for the accident. They contended that the signs and barricades which had been erected and maintained on I–10 were proper and adequate. Appellees strongly urged that the conduct and actions of Helen Lyle, the driver, were the sole and proximate cause of the accident, in that she had failed to keep a proper lookout, had disobeyed the warning signs, and had been driving excessively fast in the circumstances and over the speed limit at the point in question.

Much testimony was given on all of the above stated issues. At the close of all the evidence, appellees made motions for directed verdicts, which were denied by the court. The trial judge gave lengthy and thorough instructions to the jury concerning negligence, contributory negligence, and proximate cause. However, one sentence of the charge reads as follows:

Now you are further instructed that if you find from the evidence that the defendant had not taken possession of the place ,at which the accident complained of by the plaintiffs occurred prior to the date of the said accident on July the 12th, you will find for the defendants and against both of the plaintiffs.

Appellants objected to this portion of the charge. The objection recited that, since appellees had commenced work on the 5th of July and had undertaken to erect the signs and barricades in question under the terms of the contract prior to the accident, the question of the presence or absence of possession on the part of either defendant could not, under any circumstances, be determinative of liability.

On appeal appellants specify as error the court's instruction to the jury to find for the appellees should they

4. In appellees' response to appellants' request for admissions, appellees state that the contract provided as follows:

The Contractor shall place and maintain in good condition, standard barricades and warning signs at each end of the project and at other locations therein as called for on plan or as called for in Contractor's approved plan of operation. . The signs shall be of standard design as shown on plans.

All barricades and signs remaining in place at night and all points of hazard to traffic shall be illuminated by lights between sunset and sunrise. Signs which refer to construction operations which do not apply after work has ended for the day, shall be moved to points that are not visible to traffic until construction is resumed. The term "lights", as used herein shall mean flares, flashers of the electric type or both as determined by the Engineer. The size of the flasher lights shall be approved by the Engineer. The Contractor may provide special signs.

find that appellees did not have possession of the place at which the accident occurred. Appellants submit that this instruction put before the jury an improper issue and that the judgment must, therefore, be reversed because there is no way of knowing whether it influenced the general verdict. After a careful review of the court's charge and the entire record, we conclude that no prejudicial error was committed.

During trial the thrust of appellants' argument was that the signs and barricades did not adequately forewarn the traveling public and that they were not properly illuminated. Appellees countered with arguments that the highway signs were sufficiently informative; that the signs were adequately illuminated; that Mrs. Lyle saw them; and that the accident occurred because of her own negligence in not heeding the warnings given. Each side directed its evidence to these respective positions, and the closing arguments of counsel considered at length the questions whether the signs were adequate and whether Mrs. Lyle was herself negligent.

■■ The court's charge, with the sole exception of the one statement complained of, articulates the controlling issues in great detail. The charge must be read as a whole in order to determine whether the jury understood the basic issues to be decided.

> Portions of a charge are not to be scrutinized on appeal apart from their context as isolated verbal phenomena. The charge on the contrary must on appeal be looked at as a whole.

Goodyear Fabric Corp. v. Hirss, 169 F.2d 115, 117 (1st Cir. 1948). See also Harris v. United States, 367 F.2d 633 (1st Cir. 1966); Charles A. Wright, Inc. v. F. D. Rich Co., 354 F.2d 710 (1st Cir. 1965). We do not read Dement v. Olin-Mathieson Chemical Corp., 282 F.2d 76 (5th Cir. 1960), cited by appellants, as authority to the contrary.

Thus reading the charge in its entirety, we think the jury must have clearly understood that the basic issues for it to decide were whether the appellees negligently failed to provide adequate warning signs to route southbound traffic from I-10 to Mesa Road, or failed to place proper barricades or failed to provide proper illumination; whether Mrs. Lyle was negligent in the operation of the vehicle; and whether Mrs. Lyle's negligence, if any, was a proximate cause, or the sole proximate cause of the accident. We therefore find no error in the court's charge.

However, even if we were to find the trial court's instruction to the jury erroneous, appellants would not be entitled to relief. In our opinion it would have been proper for the trial judge to grant appellees' motions for directed verdicts. We note that after the jury returned a verdict for appellees and judgment was rendered thereon, appellants filed a motion for a new trial. In its order denying the motion, the court stated:

> The Court further finds and concludes that a verdict directed in favor of both defendants named herein at the close of all the evidence in this case as moved and requested by both defendants would have been proper, and now recites that had the jury returned its verdict in favor of the plaintiffs or any of them, the Court would have granted a motion for judgment notwithstanding the verdict in favor of both defendants.

■ A factual issue must be submitted to the jury if reasonable men could differ on the conclusions to be reached from the evidence presented when the evidence is viewed in the light most favorable to the party against whom a motion for directed verdict is made. Vandercook and Son, Inc. v. Thorpe, 395 F.2d 104 (5th Cir. 1968); Cater v. Gordon Transport, Inc., 390 F.2d 44 (5th Cir. 1968); Helene Curtis Industries, Inc. v. Pruitt, 385 F.2d 841 (5th Cir. 1967). We find from the facts presented by the record that a reasonable minded jury could not have differed on the conclusions to be drawn from the evidence. Mrs. Lyle saw the

signs and read them. There is no evidence that she experienced any difficulty whatsoever in reading the signs. The signs were numerous. They clearly warned that construction was in the area and that motorists should drive slowly. They clearly and precisely stated that the Expressway was ending. They clearly stated at what point the Expressway would end. They clearly stated that an exit was ahead. The only reasonable conclusion that can be drawn from these facts is that the appellees were not guilty of any negligence which proximately caused the accident in question. We therefore find that the appellees were entitled to a directed verdict and, consequently, appellants cannot complain of the court's charge to the jury.

Judgment affirmed.