Don H. McGUIRE et al., Plaintiffs-Appellees,

v.

Emmett Julius DAVIS, Defendant-Appellant.

No. 29205.

United States Court of Appeals, Fifth Circuit.

Jan. 5, 1971.

Rehearing Denied and Rehearing En Banc Denied March 1, 1971.

C. James Jessee, Jr., Shoob, McLain & Jessee, Atlanta, Ga., for defendant-appellant.

Bobby Lee Cook, A. Cecil Palmour, Cook & Palmour, Summerville, Ga., John K. Morgan, Chattanooga, Tenn., Morgan & Garner, Chattanooga, Tenn., for plaintiffs-appellees.

Before BELL, THORNBERRY and CLARK, Circuit Judges.

THORNBERRY, Circuit Judge:

This is an appeal from a judgment in a Georgia diversity action for injuries arising out of an automobile collision between a Georgia defendant and Tennessee plaintiffs. The district court rendered judgment for plaintiffs after the jury had returned verdicts in their favor in the aggregate amount of $148,000. Defendant appeals, and we affirm.

On November 23, 1966 an automobile driven by Emmett Julius Davis collided at an intersection in Marietta, Georgia with an automobile operated by Mrs. Frances E. McGuire in which her two children, Michael McGuire and Randall McGuire, were passengers. On January 10, 1968 Mrs. McGuire, Randall and Michael filed a complaint in district court seeking to recover from Davis damages for personal injuries sustained in the collision. Donald H. McGuire, the husband and father of the other plaintiffs, filed a complaint in which he sought to recover for medical expenses, property damages, and loss of consortium. Because the matter was tried under the admission in open court that defendant Davis was liable for the damages sustained by each of the plaintiffs,

the sole issue confronting the jury was the proper amount to be awarded. On July 15, 1969, the jury returned verdicts of $18,000 for Mr. McGuire, $40,000 for Michael, $50,000 for Mrs. McGuire, and $40,000 for Randall. After the court entered judgments based on the verdicts, Davis filed a motion for new trial, which was denied.

In this appeal Davis raises twenty-one points of error, which we discuss under seven categories. In essence, appellant argues that the verdicts and judgments are excessive, contrary to the law and the evidence and unsupported by the evidence, and that the court erred in admitting certain testimony and documents over his objection, in refusing to give his requests to charge, in giving erroneous instructions to the jury and in refusing to grant a new trial. After careful consideration of the record, we conclude that there is no merit in these contentions.

## I. Testimony

Appellant alleges that the district court erred in admitting testimony of certain witnesses over the objection that it was speculative, conclusionary, based upon hearsay and the opinions of others, not based on competent medical findings and unsupported by the evidence. The witnesses involved are Dr. Edwin Chobot, Jr., M.D., Dr. William E. Rowe, M.D., Dr. Maurice Canon, M.D., and Dr. Howard Ihrig, Ph.D. We note at the outset that each of the witnesses examined and prescribed treatment for one or more of appellees, and thus they cannot be considered merely as expert witnesses whose examination was limited to obtaining information to be used solely for the purpose of testifying as an expert in the case.

▉▉ Davis first contends that the court, over his objection that the testimony was speculative, erroneously permitted Dr. Chobot to testify that there were indications that Mrs. McGuire had suffered post-traumatic convulsions. We disagree. The testimony fell within the well-settled proposition that a physician who has examined an injured party may describe what he has seen and give his expert inferences therefrom; [1] it was therefore admissible.

▉ Secondly, appellant asserts that the court erroneously permitted Dr. Chobot to testify as to the presence of pain in Mrs. McGuire's coccygeal area over his objection that the testimony was based upon the patient's own complaint of pain. A review of the record reveals that when Dr. Chobot exerted a slight amount of pressure on the coccygeal area of Mrs. McGuire's spine, she responded in a manner that clearly indicated to the physician that she was experiencing pain. Since a doctor may testify from personal observation of his patient that he was suffering pain,[2] we do not believe the lower court erred in admitting this testimony.

▉ Davis avers, thirdly, that Dr. Chobot should not have been permitted to testify that Michael McGuire suffered brain damage since the testimony was based, appellant alleges, "on the grossest type of hearsay." Contrary to appellant's assertion, the record indicates that Dr. Chobot based his opinion that, as a result of the collision, Michael suffered a permanent neurological deficit not upon hearsay but upon " * * * my observations and my testing of this boy. * * * Accordingly, we believe this third assertion is without merit.

▉ Appellant next argues that the court erred in permitting Dr. Rowe to testify as to the existence and cause of phlebitis in Mrs. McGuire's left leg over his objection that the testimony was hy-

---

1. See, e. g., 13A Ga.Code Ann. § 38–1710; Seaboard Air Line Ry. v. Maddox, 131 Ga. 799, 63 S.E. 344 (1909); Williams Bros. Grocery Co. v. Blanton, 105 Ga. App. 314, 124 S.E.2d 479 (1962); C. McCormick, Evidence §§ 12–15 (1954).

2. See, e. g., Atlanta, K. & N. Ry. Co. v. Gardner, 122 Ga. 82, 49 S.E. 818 (1905); Paulk v. Thomas, 115 Ga.App. 436, 154 S.E.2d 872 (1967); Eason v. Crews, 88 Ga.App. 602, 77 S.E.2d 245 (1953); C. McCormick, Evidence § 266 (1954).

pothetical and based upon hearsay and conclusions. We disagree. As a qualified medical expert with a firsthand knowledge of the material facts, Dr. Rowe was well within permissible bounds in stating his opinion and inferences. For the same reason we find no merit in appellant's argument that the court erred in permitting Dr. Canon to testify that Mrs. McGuire " * * * had some disc problem at that time and she still has some evidence of some continued irritation of the nerve roots."

Finally, Davis contends that the court erred in permitting Dr. Ihrig to testify about a perception motor problem incurred by Michael over his objection that the testimony was "irrelevant, immaterial and a conclusion without any supportive evidence and that there was no evidence that, if Michael had such a problem, it related to the collision of November 23, 1966." We perceive no merit in this contention. Appellees were attempting to demonstrate the damages they sustained as a consequence of appellant's admitted negligence. Testimony indicating that Michael had developed a perception motor problem as a result of the collision clearly was both relevant and material to the case. Contrary to appellant's assertion, there was ample supportive evidence of the problem's existence. Dr. Ihrig's identification of the perception motor difficulty was based upon (a) Michael's performance on a psychodiagnostic battery, which included the Bender-Gestalt and the Wechsler intelligence scale for children, human figure drawings, and the Peabody picture vocabulary test, and (b) the doctor's personal observations of Michael in a variety of play situations. In addition, there was testimony linking the perception motor problem to the collision.

## II. Documents

Davis contends that the lower court erred in admitting medical expense statements over his objection that the statements were summaries of bills and did not sufficiently identify when and what services were performed. The statements in question—hospital and doctors' bills—were identified by Mr. McGuire, and each doctor testified as to the services that he rendered and as to the hospitalization. Each statement bore either the signature of the doctor or his secretary, or the letterhead or signature of the hospital authority. Because the medical statements were sufficiently identified and supported by oral testimony, we are unable to conclude that their admission was error.[3]

## III. Instructions

Appellant asserts that the district court's instructions on the issues of damages, proximate cause and pain and suffering were incomplete, misleading and confusing. A review of the charge in its entirety convinces us that the charge was sufficiently clear to be understood by jurors of ordinary intelligence and that the jury would have had no difficulty in applying it to the evidence and thereby reaching the proper conclusion. We have not found, nor has appellant pointed to, any specific aspect in which the charge was prejudicially incomplete. We conclude there is no merit in this contention.

## IV. Charge

Davis next urges that the district judge committed reversible error in charging the jury that "The amount of your verdicts will be based solely on the amount *you think the plaintiffs have been damaged* under the instructions which I give you in this charge."[4] (Emphasis added). Davis argues that the emphasized language confused and mis-

---

3. *See* Cambron v. Cogburn, 118 Ga.App. 454, 164 S.E.2d 350 (1968); Johnson v. Rooks, 116 Ga.App. 394, 157 S.E.2d 527 (1967).

4. The quoted portion of the charge is essentially appellees' Request to Charge Number 12.

led the jurors, causing them to believe that they had carte blanche authority to award any amounts they "thought" plaintiffs should have, without regard to the evidence, and that they were free to guess and speculate as to the amounts.

In determining the propriety of a charge we are required to view it as a whole; "(p)ortions of a charge are not to be scrutinized on appeal apart from their context as isolated verbal phenomena."[5] When measured against this standard, appellant's contention fails for want of merit. The emphasized language was qualified by the phrase "under the instructions which I give you in this charge." The record reveals that in his following instructions the judge made clear to the jurors the standards applicable to their determination of the damages. A reading of the charge in its entirety, then, clearly refutes the assertion that the jurors could have believed that they were free to disregard the evidence and to guess and speculate as to the amounts of damages. The inclusion of the emphasized language, though perhaps not desirable, did not constitute reversible error.

## V. Requests to Charge

■ Appellant asserts that the district court committed reversible error in refusing to give his Requests to Charge Numbers 1, 2, 3, 4, 5, 6 and 7. Rule 51, Federal Rules of Civil Procedure, 28 U.S.C.A., provides, "At the close of the evidence or at such earlier time as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. * * *" Rule 37 of the Local Rules of the United States District Court for the Northern District of Georgia provides, "Requests to Charge as to all issues in the case shall be prepared in triplicate by counsel, each request being on a separate sheet of paper and numbered serially and one copy shall be delivered to the Judge and one copy filed with the Clerk of the Court at or before the time for the opening of the trial, together with citation of authorities relied upon in connection therewith." The pretrial order in the instant case stated that "any request to charge will be furnished the Court at the beginning of the trial." The case was called for trial at 3:15 p. m., Thursday, July 10, 1969. After a jury had been selected and empaneled, the court adjourned for the day. At 9:30 a. m. the following day, after the court had reconvened but before the jury had been brought in or opening statements made, appellant submitted his Requests to Charge. The court, strictly construing the pretrial order and Local Rule 37, ruled that the requests had not been filed at the "beginning" of the trial and thus refused to give them. Appellant construes the district court's refusal as a violation of Rule 51.

As we stated in Wilson v. Southern Farm Bureau Casualty Company, 5th Cir. 1960, 275 F.2d 819, certiorari denied 364 U.S. 817, 81 S.Ct. 49, 5 L.Ed.2d 48 (1960), " * * * the trial court's discretion to refuse a charge because untimely requested should be sparingly and cautiously exercised * * *."[6] Indeed, it has been said that " * * * appellate courts will be loath to rule out as untimely a request made before the jury retires."[7] We have also held, how-

5. Lyle v. R. N. Adams Construction Co., 5th Cir. 1968, 402 F.2d 323, 327; Goodyear Fabric Corp. v. Hirss, 1st Cir. 1948, 169 F.2d 115, 117. See Delancey v. Motichek Towing Service, Inc., 5th Cir. 1970, 427 F.2d 897; Bankers Life & Cas. Co. v. Goodall, 5th Cir. 1966, 368 F.2d 918; Forester v. Texas & P. Ry. Co., 5th Cir. 1964, 338 F.2d 970, certiorari denied 381 U.S. 944, 85 S.Ct. 1785, 14 L. Ed.2d 708. See also Harris v. United States, 1st Cir. 1966, 367 F.2d 633; Charles A. Wright, Inc. v. F. D. Rich Co., 1st Cir. 1966, 354 F.2d 710.

6. See United States v. Ellis, 5th Cir. 1933, 67 F.2d 765; 2B Barron and Holtzoff (Wright ed. 1961), Federal Practice and Procedure § 1102.

7. 5 Moore's Federal Practice ¶ 51.03; see also Wilson v. Southern Farm Bureau Cas. Co., 5th Cir. 1960, 275 F.2d 819,

ever, that "(i)f the judge properly and fully states the law applicable to the case, refusal to give specified requests or further requests is not improper."[8] Because we deem this latter principle determinative of appellant's contention, we find it unnecessary to decide whether the letter and/or spirit of Rule 51 was violated.

The essence of appellant's Requests to Charge, as enunciated in his brief, is as follows: (a) " * * * damages awarded must be based upon the evidence * * *"; (b) " * * * damages must be proximately related to the accident of November 23, 1966 * * *"; (c) " * * * damages must be established by a preponderance of the evidence * * *"; (d) "damages could not include recovery for pre-existing or subsequent injuries * * *"; and (e) " * * * damages could not be awarded upon the basis of guess, speculation, or conjecture."

We believe the principles requested by appellant in the requests identified above as (a), (b), (c) and (d) were succinctly but adequately conveyed to the jury by the district court's statement that " * * the plaintiffs are only entitled to recover damages for those injuries or losses which are shown by the greater weight or preponderance of the evidence and which are proximately related to the automobile collision of November 23, 1966. The plaintiffs are not entitled to recover for injuries or damages which are not proximately related to the collision involved in this case." Several more times in the charge the district court instructed the jury that they were to determine damages from the evidence. As we stated in our discussion under category IV, *supra,* a reading of

the charge in its entirety reveals that the district court made clear to the jurors the standards applicable to their determination of the damages. We are, therefore, not convinced that the jurors could have believed they were free to disregard the evidence and to guess and speculate as to the amounts of damages. Thus we disagree with appellant's allegation that the court committed prejudicial error in refusing to grant the request identified above as (e).

In sum, we believe the judge properly and fully stated the law applicable to the case; his refusal to give appellant's Requests to Charge does not justify reversal.

VI. Motion for New Trial

Davis argues that the district court erred in failing to grant his motion for new trial, which was based on the grounds that (a) the verdicts and judgments were excessive, contrary to the law and the evidence and unsupported by the evidence; (b) the court erroneously admitted certain testimony over objection; (c) the court erroneously refused to give appellant's Requests to Charge; (d) the court erroneously gave appellees' Request to Charge Number 12,[9] and (e) the court erroneously gave incomplete, misleading and confusing instructions to the jury.

It is, of course, within the discretion of the district court to set aside a jury verdict and grant a new trial " * * * to nullify a seriously erroneous result and to prevent a miscarriage of justice."[10] Once the district judge has refused to grant a new trial, however, this Court will overturn his decision only if it constitutes a "manifest abuse of discretion."[11] As we stated in

certiorari denied 364 U.S. 817, 81 S.Ct. 49, 5 L.Ed.2d 48 (1960).

8. Lind v. Aetna Casualty & Surety Co., 5th Cir. 1967, 374 F.2d 377, 380; 2B Barron and Holtzoff (Wright ed. 1961), Federal Practice and Procedure § 1105.

9. See *supra* note 4.

10. Armstrong v. Jones, 5th Cir. 1967, 376 F.2d 345, 346; Whiteman v. Pitrie, 5th Cir. 1955, 220 F.2d 914, 919; Marsh v. Illinois Central R. Co., 5th Cir. 1949, 175 F.2d 498, 500.

11. *See* Kershaw v. Sterling Drug, Inc., 5th Cir. 1969, 415 F.2d 1009, 1012;

St. Louis Southwestern Railway Company v. Williams, 5th Cir. 1968, 397 F. 2d 147, 152, "at a minimum * * * courts of appeals should be cautious indeed in interfering with the decisions of trial courts on motions for a new trial based on a claim of excessive damages."

For reasons incorporated in our discussions under categories I, II, III and V, *supra*, and VI, *infra*, we are compelled to the conclusion that the district court acted well within the limits of its discretion in determining that appellant's grounds (b), (c), (d) and (e) formed no basis for the granting of a new trial.

 In support of ground (a) appellant submitted an affidavit in which he compared the amounts awarded in the instant case with verdicts reported by a research group in a book entitled "Personal Injury Handbook." It is appellant's contention that since the amounts awarded in the instant matter exceed the "average" verdict for similar injuries as reported in the handbook, it follows that the instant verdicts are excessive and the result of prejudice and bias on the part of the jury. We do not find this contention meritorious. To brand as excessive any verdict higher than the "average" verdict is to designate the "average" amount as the uppermost mark of acceptability, a unique innovation that the district court was not required to implement. A jury, after all, is not bound by an "average"

amount; it must assess damages within the context of a very particular, perhaps unique, set of circumstances. We have carefully considered the evidence before the jury and cannot say that the judge abused his discretion in denying relief to appellant on the basis of the verdict amounts. We do not find the amounts excessive as a matter of law.

## VII. Insufficiency of Evidence

Davis asserts there is insufficient evidence to support the verdict. This Court in considering a sufficiency question is required to accept all evidence in favor of the verdict as true and to give that evidence the benefit of all permissible inferences that help sustain the jury's decision.[12] When these standards are applied to the case at bar it becomes quite apparent that there is indeed sufficient evidence to sustain the verdicts.

The judgment of the district court is affirmed.

## ON PETITION FOR REHEARING AND PETITION FOR RE-HEARING EN BANC

### PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

Southern Natural Gas Co. v. Wilson, 5th Cir. 1962, 304 F.2d 253; Whiteman v. Pitrie, 5th Cir. 1955, 220 F.2d 914.

12. *See, e. g.*, Stockton v. Altman, 5th Cir. 1970, 432 F.2d 946; Lyle v. Bentley, 5th Cir. 1969, 406 F.2d 325; Southern Pacific Co. v. Jordan, 5th Cir. 1968, 395 F.2d 209; Employers Mutual Casualty Co. v. Mosqueda, 5th Cir. 1963, 317 F.2d 609.