## SEABOARD AIR-LINE RAILWAY *v.* MADDOX.

1. Where in a suit for a personal injury a physician examined the injured party on several occasions, and on the trial gave testimony by answers to interrogatories as to the results of his examination and his opinion in regard to the condition of the plaintiff and of the extent and probable permanent character of the injury, there was no error in refusing to rule out his entire evidence because on cross-examination he stated that his opinion was based both upon a personal examination and the report made to him by another physician accompanied by a sciagraph, the witness also stating that the condition of the spine of the person examined was evidently the result of an injury, and that his opinion was based upon personal examination independent of the sciagraph, and was simply confirmed by it and the report of the other physician.

2. Failure to give charges orally requested during the argument of the case furnishes no ground for a new trial, where the presiding judge gave in charge the substantial law covering the issues in the case.

3. There was no error in refusing to grant a nonsuit; there was sufficient evidence to support the verdict; and none of the grounds of the motion for a new trial require a reversal.

Argued July 23, 1908.—Decided January 15, 1909.

Action for damages.    Before Judge Littlejohn.    Sumter superior court.    August 15, 1907.

*E. A. Hawkins,* for plaintiff in error.

*Park & Park, Lane, Maynard & Hooper, R. L. Berner,* and *Smith & Hastings,* contra.

LUMPKIN, J.   Z. B. Maddox brought suit against the Seaboard Air-Line Railway, to recover damages for an injury received by him while in its service as a car repairer.   He alleged that the company had an inspector, whose duties were to inspect all cars and to tag those needing repairs, and place upon the tags a memorandum of what repairs were needed on freight-cars; that a certain car owned or operated by it was placed in the shop where he was engaged, with a card from the inspector calling for repairing or replacing a center sill underneath the floor, which was broken; that in order to do the work it was necessary to go under the car, take off the taps or nuts, and take out the broken sill; that the car was defective and unsafe, for the reason that there were no nails from the upper part of the floor passing through it and fastening it to the sills; that this was unknown to the plaintiff, and it was impossible for him to discover it; that the door of the car was fastened, and it was not his duty to go inside of it; that the foreman instructed him to go under the car and take off the taps or nuts, and that he (the foreman) would bring "a pull-bar" and prize the sill from the flooring, after the removal of the taps or nuts; that if nails had been driven through the planks of the flooring, it would have been absolutely necessary to prize the sill with a "pull-bar" or some other tool before it could have been removed; that the plaintiff went under the car, as he was instructed to do by the foreman, and took off the taps or nuts; that as soon as they were removed, the sill fell on his right shoulder and back, seriously injuring him; and that he was entirely without fault, and his injuries were caused by the negligence of the company.   By amendment he alleged that the defect in the car, resulting from the absence of nails fastening the floor to the sills, was known by the company, or could have been known by it by the exercise of ordinary care and diligence; and that he proceeded with the work in which he was engaged in the usual way in which such work was done, and knew of no danger, and was not apprised of any that would occur from doing the work

in that way; and that he was not warned of any such danger. The defendant denied the substantial allegations made by the plaintiff, tending to show liability on its part. The jury found for the plaintiff $5,000. A motion for a new trial was made and overruled, and the defendant excepted.

1. A doctor had examined the plaintiff on several occasions after the injury. His evidence was taken by interrogatories. He gave his opinion as to the character and extent of the injury and its probable permanency. On cross-examination he said: "My opinion is based upon both a personal examination and the report made to me by Dr. Michael Hoke, October 25th, 1904, over an X-ray picture. The condition of the spine or vertebræ was evidently the result of an injury. This opinion is based upon my personal examination independent of the X-ray, simply confirmed by the X-ray examination. . . From the examination made by me October 26th, 1904, or prior thereto, the curvature seemed to be of comparatively recent date. . . In my opinion the condition is permanent and will grow rather worse than better. . . It is impossible to state the exact extent of his disability. The condition of the spine, above described [witness had previously described its condition when examined by him] is permanent, and materially lessens the ability of the plaintiff to do hard labor. There was no injury that I saw to the frontal bones of plaintiff."

One ground of the motion for a new trial was because the court admitted in evidence the answers of the doctor to the interrogatories, objection having been made in writing because the report of Dr. Hoke and the X-ray picture were not attached to his answer. It is clear that the evidence of this physician was based primarily upon his own examination, and that his opinion thus formed was merely confirmed by a report and a sciagraph given to him by another doctor. In his direct evidence he did not refer to this report and sciagraph at all, but testified in regard to his own examination and its results. These matters were brought out on cross-examination. Plainly much of his evidence was not based on them. There was no error in refusing to exclude his opinion as to the extent and permanency of the plaintiff's injuries.

2. Complaint was made that the court refused to give cer-

51

tain charges orally requested during the argument of the case. It is sufficient to say that the court instructed the jury on the law in regard to the issues between the parties, and that the requests to give certain specific charges were not in writing. Civil Code, §5479.

One ground complained that the judge did not explain to the jury the meaning of the words, "ought to have known." But the presiding judge certified that no request was made on that subject.

3. Complaint was made that the jury found contrary to several specified charges of the court. This amounted to no more than saying that they found contrary to the law on the subjects referred to in those charges. It was also urged that the court refused to grant a nonsuit, and that the verdict was contrary to law and the evidence and was excessive. An examination of the evidence, in connection with the law bearing on the case, satisfies us that none of these grounds are well taken.

Error was also assigned upon a charge which stated that the "servant does not assume the risk occasioned by negligence, if any, upon the part of the master or his servants, if he had no knowledge or notice of the same," etc. If this were a suit seeking to recover for the act of a fellow-servant under the general law touching that subject, this might have been material. But it was a suit by a railway employee, based upon the alleged negligence of the master; and when this charge is read in connection with the pleading, the evidence, and the entire charge, we do not think that the reference to the servants of the master, even if not based on a sufficient allegation on that subject, as contended, was such as to require a reversal.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*