44867. STATE HIGHWAY DEPARTMENT v.
PETERS et al.

ARGUED NOVEMBER 4, 1969—DECIDED FEBRUARY 11, 1970.

*Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Richard L. Chambers, Assistant Attorney General, Marshall R. Sims, George J. Hearn, III, Deputy Assistant Attorneys General,* for appellant.

*Clarke & Haygood, Harold G. Clarke,* for appellees.

JORDAN, Presiding Judge. 1. The agreed date of taking is July 9, 1965, and the State Highway Department asserts error in its first enumeration on the refusal of the court to allow a real estate appraiser to give his opinion as to values on that date because he did not personally inspect the property until May of 1968.

The witness testified at length concerning his training and ex-

perience in appraising, and his proffered testimony as to how he arrived at his opinion discloses that in addition to his inspection in May of 1968, he relied on information obtained from one of the condemnees at that time, various photographs, information concerning the percentage of various types of soil on the land, terrain features, including erosion and drainage conditions, information obtained from State Highway Department employees concerning the condition of the property at the time of the taking, valuations based on sales of other property, including a sale 21 months before the taking and another 4 months after the taking, a percentage factor of 8% per year respecting the average annual increase in value of farm land in Georgia, and the loss in usefulness of the land for a dairy because the limited access right of way separated the buildings from the major portion of the pasture land.

Before hearing the testimony of the witness as to how he reached his opinion, but after the witness had testified that he did not inspect the property until May of 1968, the trial judge stated, in considering the objection of the condemnees, "I think the case as a whole—the witness, even though he might qualify as an expert, cannot testify to the value of something that he has never seen and this witness did not see this farm as it existed July 9, 1965." Later, in reiterating his ruling after hearing the additional testimony of the witness, he stated, "The only thing I said is that my opinion is that Mr. Wigley could not give an opinion of the value of the land on July 9, 1965."

In view of the above statements, it is clear that the trial court, in excluding the testimony of this witness, did not purport to act in the exercise of a sound discretion as to whether the witness qualified as an expert, but pretermitted this issue and excluded the testimony on a single objective test—no personal inspection by the witness closely related in time to the taking. Accordingly, the contention of the condemnees that the ruling is one made in the exercise of a sound discretion, which should not be disturbed unless manifestly abused, is without merit.

The condemnees further contend that for a witness to testify as to the value of an object which he has never seen, his testimony *must* be in response to a hypothetical question

which lays the proper foundation. The assumption in this contention involves a situation not applicable to the present case, for the witness did see the land, and did consider information to determine conditions as they existed three years previously, and the cases cited by the condemnees do not support the contention.

The appellant relies, among other cases, on *Howard v. State Hwy. Dept.*, 117 Ga. App. 280 (160 SE2d 204). There the trial court allowed a witness qualified as an expert to testify concerning his appraisal in 1964 for a taking in 1961, and this court, in upholding the ruling of the lower court allowing the witness to testify as an expert, stated conclusions which we summarize as follows: 1. An expert appraiser is not precluded from testifying as to the value of land or damage thereto on a specified date merely because he did not view the property or make an appraisal until much later. 2. His opinion of value is not inadmissible because it is based on hearsay and not on direct knowledge. 3. The lack of actual knowledge goes to the weight of his opinion, a jury question, and does not render the opinion inadmissible. Having again examined the applicable Code provisions (§§ 38-1708, 38-1709, 38-1710) and the cases relied upon in the *Howard* case, we follow the *Howard* case and consider it controlling in determining the admissibility of the rejected testimony in the present case.

2. The second enumeration, based on the objections to the cross examination of a witness as to how the exact size and shape required by the condemnor affected value, is without merit.

3. The third and fourth enumerations are directed to the refusal of the court to exclude the testimony of one of the condemnees and another witness concerning improvements and the cost of improving land purchased by this condemnee onto which he removed the dairy business from its location on the land divided by the limited access right of way acquired by the State Highway Department.

In their brief the condemnees argue relevancy on the basis that both witnesses testified as to the similarity of the new farm to the old farm, and that "the questions asked and the answers

given must certainly be proper in order to show the work and expense necessary for improving pasture land to the state of the land upon which the right of way was taken. These are facts which are directly illustrative of the fair market [value] of the land taken." Among other reasons the State Highway Department argues, in effect, that it could mislead the jury into allowing a double recovery, for the loss of the land taken and consequential damages thereto, plus reproduction costs.

In the lower court the judge, in informing the jury that he would allow this testimony, referred to an earlier ruling sustaining an objection on a continuing basis to evidence "in the nature of what the condemnee contended to be the reproduction costs of bringing the new farm up to the same quality of the farm that is involved in the proceedings" and stated that he would "now allow the condemnee[s] to go into that line of testimony for you to consider along with the other evidence that will be in the case." His final instructions delimit the jury to findings based on the value of the land taken and consequential damages to the remainder.

We think that the evidence is not without some relevance in enabling the jury to determine the true market value of the land being taken and the damage to the remainder, to the extent that the cost of improving other land might affect the price that the owner might be willing to accept and that a buyer might be willing to pay for land already improved, in dealing with each other at arm's length, and the instructions of the court, as given, did not authorize the jury to consider the evidence for any purpose other than to arrive at the value of the land involved in the condemnation. Under these circumstances we do not think there is a showing of harmful error, but in the event of another trial, if the evidence is again offered, it would be appropriate to limit its consideration under somewhat more explicit instructions.

4. The fifth enumeration is directed to an excerpt from the charge, as follows: "In determining consequential damages, if any, to the part not taken, you are not confined to the damages proximately caused by the mere taking, but you may consider any evidence of damages to the remainder of the property, les-

sening its fair market value as of the date of taking."

The above excerpt is immediately preceded by the following: "You will consider whether consequential damages would naturally and proximately arise to the remainder of the owners' property from the taking of that part which is taken and devoted to the purpose for which it is taken, including its maintenance and operation. The measure of such consequential damage, if any you find, is the diminution or lessening the fair market value of the remainder of the property, proximately arising from the causes just mentioned."

We consider the excerpt correct as an abstract principle of law. See *Flemister v. Central Ga. Power Co.*, 140 Ga. 511 (10) (79 SE 148). There is also no merit in the contention that it is argumentative, misleading, or confusing, especially when considered in context with the entire charge on consequential damages.

5. In the seventh enumeration the State Highway Department insists that the court erred in failing and refusing to enter a pre-trial order on its motion. While § 16 of the CPA as amended (Ga. L. 1966, pp. 609, 628; 1967, pp. 226, 231; *Code Ann.* § 81A-116) is couched in mandatory language, and it is error for the court to ignore the mandate of the statute, this court concludes upon a review of the entire record, that no basis exists to support a determination of harmful error requiring reversal.

6. The trial judge erred in overruling the motion for new trial for the reasons set forth in the first division of this opinion.

*Judgment reversed. Whitman and Evans, JJ., concur.*