## 45002. SMITH v. DAVIS.

ARGUED JANUARY 9, 1970—DECIDED APRIL 7, 1970—
REHEARING DENIED APRIL 29, 1970—

*W. G. Elliott,* for appellant.

*Arthur C. Farrar,* for appellee.

JORDAN, Presiding Judge. 1. The trial court did not err in overruling appellant's motion not to qualify the jury with respect to a particular insurance company where it appears that the company was the plaintiff's insurer, but had denied coverage under the uninsured motorist provisions of the policy, it further appearing that an agent of the company in Ware County was

served with the suit and by agreement with the defendant was paying for his counsel to defend the action on its merits. Obviously the insurance company had a potential financial interest in the outcome of the litigation, either to moot any issue of its liability, if any, or to reduce the amount of potential liability below the maximum coverage, if there was any coverage. See *Weatherbee v. Hutcheson*, 114 Ga. App. 761 (1) (152 SE2d 715).

2. In enumerating error on the refusal to grant a continuance the defendant insists upon two grounds asserted in the lower court, that of requiring the defendant to go to trial without the benefit of two discovery depositions taken by agreement of counsel, but not yet received by the court, and that of requiring the defendant to go to trial without the benefit of a pre-trial order, despite the mandate of the statute.

"All applications for continuance are addressed to the sound legal discretion of the court, and, *if not expressly provided for*, shall be granted or refused as the ends of justice may require." *Code* § 81-1419. On numerous occasions the appellate courts have ruled that the discretion vested in the trial court in this respect will not be disturbed unless manifestly, flagrantly, or clearly abused.

"That a commission issued to examine a witness has not been returned shall be no cause for a continuance, unless the party seeking the continuance shall make the same oath of the materiality of the testimony as in the case of an absent witness; and the party shall show due diligence in suing out and having the same executed." *Code* § 81-1417. In the case of an absent witness the movant must show, among other things, that the testimony is material, and the facts expected to be proved by the absent witness. Ga. L. 1959, p. 342 (*Code Ann.* § 81-1410). "In all cases, the party making an application for a continuance must show that he has used due diligence." *Code* § 81-1416. The showing made with respect to the two discovery depositions falls far short of meeting the above statutory requirements.

The Georgia pre-trial rule (CPA § 16; Ga. L. 1968, pp. 1104, 1106; *Code Ann.* § 81A-116) differs from the Federal rule (Rule 16, see Book 23 A, Ga. *Code Ann.*, p. 168) in that, among other things, pre-trial procedures are mandatory in Georgia if sought

by a party or the court, but both rules make the pre-trial order itself mandatory, i.e., "[t]he court shall make an order," etc. In *State Hwy. Dept. v. Peters,* 121 Ga. App. 167 (173 SE2d 253), this court recognized that it is error for the trial court to ignore the mandate of the statutory rule in Georgia, but determined, upon a review of the entire record that no basis existed in that case for a determination of harmful, and therefore reversible, error.

If trial courts choose to ignore the mandate, however, the rule becomes meaningless, and the fact that the parties failed to reach any agreements, which the trial court stated for the record as the reason for failing to make a pre-trial order, affords no legal justification to ignore the mandate. It is the duty of the court, to the extent practicable and possible, to separate the wheat from the chaff; to eliminate uncontroversial issues and formulate the remaining issues to show the real contentions of the parties.

Nevertheless, recognizing the discretion vested in the trial court with respect to a continuance in situations "not expressly provided for," appellate courts are reluctant to interfere with the exercise of this discretion unless manifestly, flagrantly, or clearly abused. Appellant here relies solely on the mandate of the statute that the court "shall make" a pre-trial order and makes no showing that such failure was harmful or adverse to the defendant on any issue.

Accordingly, we conclude that no harmful error appears in respect to the refusal of the trial court to grant a continuance, for any reason argued and insisted upon.

3. In support of the asserted error in recognizing the Southern Reporter as proof of Florida law the defendant limits his brief to a citation of the 1949 decision of *Carter v. Graves,* 206 Ga. 234 (56 SE2d 917). In that case the Supreme Court stated (p. 236) that the Pacific Reporter "was not shown to be such a publication as is 'published by authority,' so as to authorize the trial court to take judicial cognizance thereof" under *Code* § 38-112.

In 1968 the legislature added § 43(c) to the Civil Practice Act, as follows: "A party who intends to raise an issue con-

cerning the law of another State or of a foreign Country shall give notice in his pleadings or other reasonable written notice. *The court, in determining such law, may consider any relevant material or source,* including testimony, whether or not submitted by a party or admissible under the rules of evidence. The court's determination shall be treated as a ruling on a question of law." Ga. L. 1968, pp. 1104, 1108 (*Code Ann.* § 81A-143(c)).

We think § 43(c) of the Civil Practice Act as amended, supra, supersedes the holding in *Carter v. Graves,* 206 Ga. 234, supra, as a controlling precedent to preclude the use of the Southern Reporter as a relevant source of Florida law, if the trial court so decides, irrespective of whether the Florida cases as therein reported are or are not "published by authority." Accordingly, under the circumstances here disclosed the trial court was authorized to consider the reports of Florida cases appearing in the Southern Reporter as a relevant source of Florida law to determine the substantive law applicable to the issue of liability.

4. The contention that the opinion of a physician that the plaintiff is permanently blind is based on hearsay facts obtained from other physicians, and therefore inadmissible, is not supported by the transcript. While the physician did receive information about the injuries from other examining physicians, and even if it be conceded that his opinion of permanent blindness, if based on hearsay, should not be heard (see *Code* § 38-1710), the physician in his testimony ultimately made it clear that his opinion that the plaintiff was permanently blind was an independent conclusion based on his own examination. See *Seaboard A. L. R. v. Maddox,* 131 Ga. 799, 801 (63 SE 344).

5. Error is asserted on the overruling of defendant's objection to the plaintiff's evidence as to medical bills, based on the argument that "it must be shown (1) that medical bills are reasonable, and (2) that the medical services as rendered were necessary" in treatment of the injury on which the action is based.

From an examination of the transcript it appears that the objection for the above stated reasons was directed to three exhibits only, two checks which the plaintiff signed for a total

of $750 in payment of medical expenses, and another check for $500 signed by the plaintiff's father. While there is no direct testimony in the cited portion of the transcript or elsewhere that these payments were for reasonable and necessary expenses, the transcript includes testimony concerning the serious nature of the plaintiff's injuries, the character of the services rendered, the time spent in the hospital, and the fact that the payments were made in response to bills submitted for services rendered. This is sufficient under the evidence in the present case to support a permissible inference, if so determined by the jury, that the charges were reasonable, as well as necessary. *Ga. R. &c. Co. v. Tompkins,* 138 Ga. 596, 603 (75 SE 664).

6. No error is shown in overruling the defendant's objection to the plaintiff's reading the deposition of the defendant based on the objection that the plaintiff had closed his case, the defendant had offered no evidence, and that to allow the plaintiff to introduce the deposition would not be in rebuttal but would allow him to reopen his case contrary to the rules of practice and procedure. The court had ruled that the plaintiff could call the defendant to testify in person, or could read the deposition. The transcript does not disclose that at that time the defendant in any way objected to the reading of the deposition because it was not shown that it was the deposition of the defendant or that it contained hearsay.

If the deposition were not that of the defendant he was in court and could have so testified.

"The trial judge has a right to reopen a case at any time for the introduction of additional testimony, and this discretion will not be disturbed, unless manifestly abused." *Jackson v. Ga. R. & Bkg. Co.,* 7 Ga. App. 644 (4) (67 SE 898). "The deposition of a party . . . may be used by an adverse party for any purpose." Ga. L. 1966, pp. 609, 636 (*Code Ann.* § 81A-126 (d) (2)). "The deposition of a witness, whether or not a party, taken upon oral examination, may be used in the discretion of the trial judge, even though the witness is available to testify in person at the trial." Ga. L. 1966, pp. 609, 637 (*Code Ann.* § 81A-126 (d) (4).

7. It is asserted that the "court erred in not making an

addition to its charge, to wit: The law of Florida as it appears in Bryan v. Bryan, 59 So. 2d 513, when a timely request was made."

The instructions as actually given in this respect appear to be in substantial accord with Bryan v. Bryan, supra, and are as follows: "A driver is not guilty of wanton misconduct when he falls asleep at the wheel of an automobile unless he knows or should have known that he was in no condition to drive an automobile. When one has notice or knowledge of the existence of a physical impairment which may come on suddenly and destroy his power to control an automobile it is negligence to an extreme degree for such person to operate such automobile. Such conduct constitutes gross negligence."

The contentions of the defendant in respect to the failure to charge additionally on this aspect of Florida law are without merit.

8. The evidence authorizes a verdict for the plaintiff and the trial court did not err for any reason argued and insisted upon in refusing to direct a verdict, grant judgment n.o.v., or, in the alternative, grant a new trial.

*Judgment affirmed. Eberhardt and Pannell, JJ., concur specially.*

EBERHARDT, Judge, concurring specially. While I concur in the judgment of affirmance, I do so only because an examination of this record reveals that the plaintiff specifically pleaded all grounds of negligence upon which he relied, the rules of Florida law upon which he expected to rely, and itemized the special damages. This put the defendant on notice of the plaintiff's contentions so that he should have been able to prepare his defense.

A pre-trial order here, however, would have saved a great deal of time in the trial of the case. The transcript is replete with colloquies relative to the matter of depositions and their use, proof of the law of Florida and the manner of doing so, and other items which should have been settled at a pre-trial conference so that under the pre-trial order these matters would not arise. Pre-trial conferences and a resulting pre-trial order settling these collateral matters and specifying the issues to be

tried are essential to an orderly and expeditious trial under the notice pleading system which has been adopted.

I do not think it likely that a different result would be achieved under a pre-trial order here, and consequently I do not insist upon a reversal because of the court's failure to follow the mandates of the statute. It is my view, however, that when the pleadings generally follow the provisions of the Civil Practice Act, denial of a continuance when no pre-trial order has been made is harmful as a matter of law. Under our former system of pleading the issues were made and determined by the petition, demurrers, pleas and answer. In that fashion the defendant could prepare to meet the issues at the trial. But pleadings today do not generally outline the issues. These are left to discovery and in particular to the pre-trial order. Without the order one cannot know whether evidence is relevant or material, and thus often has no basis for objection. This results, not only in failure to conserve time in the progress of a trial, but allows parties to place a great deal of evidence before the jury which the rules of evidence would forbid were the issues known. How can the trial judge rule upon objections made when these issues are unknown? How will he formulate a charge to the jury? The order is the quid pro quo of the new liberal pleadings.

I am unwilling to go further than we go today on the matter of "harmless error" in the denial of a continuance until a pre-trial order is made by the court. If the parties cannot or will not agree upon the provisions of a pre-trial order it is the business and duty of the court to make the order, by which they are to be bound in conducting the trial.

PANNELL, Judge, concurring specially. I concur with the judgment reached and concur in Division 1 of the opinion solely on the grounds that the motion not to qualify the jury as to relationship with the insurance company did not properly raise the question upon which a refusal to qualify would have been proper. The motion here was made on the ground that the insurance company had "denied coverage." If the motion had been made on the ground there was actually no coverage, then the trial judge, in my opinion, should make a determination of the correctness of such fact (paragraph 43 (b) of the Civil

Practice Act; Ga. L. 1966, pp. 609, 654; *Code Ann.* § 81A-143 (b)) prior to the trial of the main case against the defendant tortfeasor, and if he determines there be no coverage, then the trial judge should not purge the jury as to its relationship with the insurance company. To do so, in my opinion, would prejudice the rights of the defendant by leading the jury to believe he was covered by insurance when he was not and would be reversible error. A similar general ruling was made in the case of *Doe v. Moss*, 120 Ga. App. 762 (172 SE2d 321), where an objection was actually made on the ground there was no coverage, but it appears from the record in that case that the motion not to purge the jury on the grounds of no coverage was based upon certain facts stated in the motion, which facts, as a matter of law, did not support the conclusion there was no coverage. The motion was, therefore, on its face insufficient to properly raise the question attempted to be presented by the motion.